**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IVY NIXON, Individually and on Behalf of All Others Similarly Situated, <br><br><br> Plaintiff, <br><br> v. <br><br> CVS HEALTH CORPORATION, KAREN S. LYNCH, SHAWN M. GUERTIN, and THOMAS F. COWHEY, <br><br><br> Defendants. | Case No. 1:24-cv-05303-MMG <br><br> <u>CLASS ACTION</u> |
| ORLANDO TATONE, Individually and on Behalf of All Others Similarly Situated, <br><br><br> Plaintiff, <br><br> v. <br><br> CVS HEALTH CORPORATION, KAREN S. LYNCH, SHAWN M. GUERTIN, and THOMAS F. COWHEY, <br><br><br> Defendants. | Case No. 1:24-cv-06771 <br><br> <u>CLASS ACTION</u> |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION**
**OF THE PENSION FUNDS FOR APPOINTMENT AS LEAD PLAINTIFF,**
**APPROVAL OF THEIR SELECTION OF LEAD COUNSEL, AND CONSOLIDATION**
**<u>OF RELATED ACTIONS</u>**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................................... 1

FACTUAL BACKGROUND.......................................................................................................... 3

ARGUMENT .................................................................................................................................. 5

    A.    The Pension Funds Are The Most Adequate Plaintiff........................................................ 5

          1.    The Pension Funds' Motion Is Timely ....................................................................6

          2.    The Pension Funds Believe They Have The Largest Financial Interest In The Relief Sought By The Class.......................................................................................6

          3.    The Pension Funds Otherwise Satisfy The Requirements Of Rule 23 ....................7

          4.    The Pension Funds Are Precisely The Type of Lead Plaintiff Envisioned By The PSLRA .................................................................................................................9

    B.    The Pension Funds Selected Well-Qualified Lead Counsel To Represent The Class... 13

    C.    The Related Actions Should Be Consolidated................................................................. 14

CONCLUSION............................................................................................................................. 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
258 F.R.D. 260 (S.D.N.Y. 2009) ...........................................................................10, 11, 13, 15

*In re Bank of America Corp. Securities, Derivative & ERISA Litigation*,
No. 09-md-2058-PKC (S.D.N.Y.) ...........................................................................13

*Chilton v. Chiumento Grp.*,
365 F. App'x 298 (2d Cir. 2010) .............................................................................5

*In re Citigroup Inc. Bond Action Litigation*,
No. 08-cv-9522-SHS (S.D.N.Y.) ...........................................................................11

*Freedman v. Weatherford Int'l Ltd.*,
No. 1:12-cv-02121-LAK (S.D.N.Y.) .......................................................................14

*In re Genworth Financial, Inc. Securities Litigation*,
3:14-cv-00682-JAG (E.D. Va.)................................................................................14

*Glauser v. EVCI Career Colls. Holding Corp.*,
236 F.R.D. 184 (S.D.N.Y. 2006) .............................................................................9

*Hom v. Vale, S.A.*,
2016 WL 880201 (S.D.N.Y. Mar. 7, 2016) ..........................................................7, 8

*Lax v. First Merchs. Acceptance Corp.*,
1997 WL 461036 (N.D. Ill. Aug. 11, 1997) .............................................................6

*In re MF Global Holdings Ltd. Sec. Litigation*,
No. 1:11-cv-07866-VM (S.D.N.Y.).......................................................................14

*Mustafin v. GreenSky, Inc.*,
2019 WL 1428594 (S.D.N.Y. Mar. 29, 2019) ...................................................10, 12

*In re Nortel Networks Corp. Securities Litigation*,
No. 05-md-1659-LAP (S.D.N.Y.) ...........................................................................13

*Ontario Teachers' Pension Plan Board v. Teva Pharmaceuticals Industries Ltd.*,
No. 3:17-cv-00558-SRU (D. Conn.)........................................................................14

*In re Penn West Petroleum Ltd. Securities Litigation*,
No. 14-cv-6046-JGK (S.D.N.Y.)..............................................................................11

*In re Quality Systems, Inc. Securities Litigation*,
  No. 13-cv-1818-CJC (C.D. Cal.) ...................................................................................11

*Reimer v. Ambac Fin. Grp., Inc.*,
  2008 WL 2073931 (S.D.N.Y. May 9, 2008) ...................................................................12

*Sallustro v. CannaVest Corp.*,
  93 F. Supp. 3d 265 (S.D.N.Y. 2015)..................................................................................6

*Tatone v. CVS Health Corp.*,
  No. 1:24-cv-06771, ECF No. 1 (S.D.N.Y. Sept. 6, 2024) ............................................... *passim*

*The Police Retirement System of St. Louis v. Granite Construction Inc.*,
  No. 3:19-cv-04744-WHA (N.D. Cal.) ..............................................................................14

*Villare v. ABIOMED, Inc.*,
  2020 WL 3497285 (S.D.N.Y. June 29, 2020) ...................................................................1

*Villella v. Chem. & Mining Co. of Chile Inc.*,
  2015 WL 6029950 (S.D.N.Y. Oct. 14, 2015).....................................................................1

*In re Wachovia Preferred Securities and Bond/Notes Litigation*,
  No. 09-cv-6351 (S.D.N.Y.)..............................................................................................11

*In re Wells Fargo & Co. Securities Litigation*,
  No. 20-cv-4494-JLR (S.D.N.Y.)...................................................................................11, 13

*In re Wells Fargo Mortgage-Backed Certificates Litigation*,
  No. 09-cv-1376-LHK (N.D. Cal.)......................................................................................11

*In re WorldCom, Inc. Securities Litigation*,
  No. 02-cv-3288-DLC (S.D.N.Y.) .....................................................................................13

**Rules**

Fed. R. Civ. P. 23............................................................................................. *passim*

Fed. R. Civ. P. 23(a)(4).......................................................................................................8

Fed. R. Civ. P. 42(a) ......................................................................................................1, 14

**Statutes**

15 U.S.C. § 78u-4(a)(3)(A)..................................................................................................6

15 U.S.C. § 78u-4(a)(3)(B)(i) .......................................................................................2, 5, 10

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ...............................................................................2, 5, 7, 10

iii

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) ........................................................................................6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc) .........................................................................................7

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) ......................................................................................13

15 U.S.C. § 78u-4(a)(3)(B)(v) ...................................................................................................13

**Other Authorities**

17 C.F.R. § 240.10b-5..................................................................................................................1

H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730
    (1995)....................................................................................................................................9

S. Rep. No. 104-98 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679 (1995) ........................................9

Louisiana Sheriffs' Pension & Relief Fund ("Louisiana Sheriffs"), Southeastern Pennsylvania Transportation Authority ("SEPTA"), and City of Miami Fire Fighters' and Police Officers' Retirement Trust ("Miami FIPO") (collectively, the "Pension Funds") respectfully submit this memorandum of law in support of their motion: (1) to be appointed Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); (2) for approval of their selection of Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") and Bleichmar Fonti & Auld LLP ("BFA") as Lead Counsel for the Class; (3) for consolidation of the above-captioned securities class actions (the "Related Actions") pursuant to Rule 42(a) of the Federal Rules of Civil Procedure ("Rule 42(a)"); and (4) for any such further relief as the Court may deem just and proper.

### PRELIMINARY STATEMENT

There are currently two Related Actions pending against CVS Health Corporation ("CVS" or the "Company") and certain of its current and former senior officers (collectively, "Defendants"). The Related Actions allege that Defendants defrauded investors in violation of Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b), 78t(a), and U.S. Securities and Exchange Commission Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. Specifically, the Related Actions allege that from February 9, 2022, through April 30, 2024, inclusive, (the "Class Period"), Defendants misrepresented and concealed the true extent to which medical cost trends and health care utilization patterns had negatively impacted the Company's business.[1]

---

[1] The Related Actions assert different class periods. For purposes of appointing a Lead Plaintiff, the longest alleged class period typically governs. *See Villella v. Chem. & Mining Co. of Chile Inc.*, 2015 WL 6029950, at *5 n.5 (S.D.N.Y. Oct. 14, 2015) (citation omitted). That said, courts will set aside the longer class period when "there is a risk that the longer class period is a product of gamesmanship." *Villare v. ABIOMED, Inc.*, 2020 WL 3497285, at *5 (S.D.N.Y. June 29, 2020).

Pursuant to the PSLRA, this Court is to appoint the "most adequate plaintiff" to serve as Lead Plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(i).  In that regard, the Court is to determine which movant has the "largest financial interest" in the relief sought by the Class in this litigation, and also whether such movant has made a *prima facie* showing that it is a typical and adequate class representative under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  For the reasons set forth below, the Pension Funds are the "most adequate plaintiff" by virtue of, among other things, the significant losses that they incurred on their investments in CVS securities during the Class Period: $2.9 million as calculated under a first-in, first-out ("FIFO") basis and $2.5 million as calculated under a last-in, first-out ("LIFO") basis.[2]

In addition to asserting the largest financial interest, the Pension Funds readily satisfy the relevant requirements of Rule 23 because their claims are typical of all members of the Class, and they will fairly and adequately represent the Class.  As set forth in greater detail in the Joint Declaration submitted herewith, the Pension Funds are three sophisticated investors that have collectively recovered over $3 billion leading securities class actions, including as part of Lead Plaintiff groups just like this one.  Through this prior experience, the Pension Funds have proven that they have the ability to direct complex litigation separate and apart from their counsel.  *See* Bleichmar Decl., Ex. C ¶¶3-8. Indeed, two of the Pension Funds, Louisiana Sheriffs and SEPTA, share a relationship that predates this litigation by fifteen years, having worked together on two

---

Here, such a risk exists given that the complaint asserting the broader class period was filed just two business days prior to the Lead Plaintiff deadline. *See Tatone v. CVS Health Corp.*, No. 1:24-cv-06771, ECF No. 1 (S.D.N.Y. Sept. 6, 2024) ("*Tatone*").  The Pension Funds reserve their right to challenge the application of the broader class period if, after Lead Plaintiff motions are filed, it appears that the filing of *Tatone* is the product of gamesmanship.

[2] The Pension Funds' PSLRA-required Certifications are attached as Exhibit A to the Declaration of Javier Bleichmar (the "Bleichmar Decl.") submitted herewith.  In addition, charts providing calculations of the Pension Funds' financial interests are provided as Exhibit B to the Bleichmar Decl.

securities class actions arising from the financial crisis that resulted in a total of over $750 million in recoveries for investors, further demonstrating the Pension Funds' ability to act cohesively and work together in the best interests of the putative Class. *See id.* ¶6.

Further, the Pension Funds fully understand the Lead Plaintiff's obligations to the Class under the PSLRA and are willing and able to undertake these responsibilities to ensure the vigorous prosecution of the action. Before seeking appointment as Lead Plaintiff, representatives of the Pension Funds participated in a conference call to discuss, among other things, the merits of the claims against Defendants, and the Pension Funds' common goals and strategy for the prosecution of this litigation. *See id*. ¶¶13-14. The Pension Funds have conferred together and discussed how they will jointly prosecute this action, and otherwise ensure the vigorous, cost-effective prosecution of this litigation in the best interests of Class members. *See id*.

The Pension Funds' adequacy is also demonstrated through their selection of Bernstein Litowitz and BFA to serve as Lead Counsel for the Class. Both firms are highly experienced prosecuting claims under the federal securities laws and have, working together, jointly recovered more than $450 million for investors in actions subject to the PSLRA. Based on the Pension Funds' significant financial interest in the outcome of this action, and their ability to jointly oversee the prosecution of the litigation in a cohesive manner, the Pension Funds respectfully request that the Court appoint them Lead Plaintiff and otherwise grant their motion.

**FACTUAL BACKGROUND**

As alleged, CVS is a healthcare company that offers Medicare and other health insurance plans through its Health Care Benefits segment. ¶2.[3] The profitability of these plans is largely

---

[3] Citations to ¶__ refer to the complaint filed in *Nixon v. CVS Health Corp*., No. 1:24-cv-05303-MMG (S.D.N.Y. July 12, 2024), ECF No. 1 ("*Nixon*") unless otherwise indicated.

3

dependent on medical cost trends and healthcare utilization patterns. ¶3. This is because while the premiums customers pay for CVS's healthcare plans are generally fixed, CVS must cover healthcare costs and additional benefits beyond what customers pay in premiums. ¶3.

During the relevant period, the Company represented that its "integrated health care model . . . lowers overall health care costs" and that its "Health Care Benefits segment is expected to continue to benefit from Medicare and Commercial membership growth." ¶¶27, 29 (emphasis removed). In truth, however, it is alleged that these statements were materially false and misleading because CVS concealed the impact that escalating medical cost trends and health care utilization patterns had on the Company at the time. ¶32.

*Nixon* alleges that investors began to learn the truth on August 2, 2023, when CVS announced earnings for the second quarter of 2023 and revealed that operating income declined $1.4 billion, or 30.7%, compared to the prior year. The Company primarily attributed its reduced operating income to declines in the Health Care Benefits segment and higher medical cost trends in Medicare Advantage for the remainder of 2023. ¶¶33, 35.[4] Still, CVS falsely assured investors that the Company was "able to offset the pressures in our healthcare benefits segment with continued strong execution in our health services segment" and that the Health Care Benefits segment would benefit from continued membership growth in Commercial. ¶¶35, 37. Despite these assurances, the news of the higher medical cost trends caused the price of CVS stock to decline by $2.04 per share, or nearly 3%, closing at $72.32 per share on August 3, 2023. ¶34.

Then, on February 7, 2024, CVS announced earnings results for 2023 and cut its diluted earnings-per-share ("EPS") guidance range for 2024 to at least $7.06 from at least $7.26. The

---

[4] *Tatone* alleges that the truth was first revealed roughly three months earlier, on May 3, 2023, when CVS "restated its financial results for fiscal year 2022 and the associated quarters." *Tatone*, ECF No. 1, ¶5.

Company also reduced its cash flow from operations guidance to at least $12.0 billion from at least $12.5 billion due, in part, to "declines in the Health Care Benefits segment." ¶¶45-46. However, CVS continued to downplay the true extent of the cost and utilization pressures the Company faced at the time, representing that "we continue to navigate through elevated utilization trends in our Medicare Advantage business" and that "our view of the long-term opportunity offered by this business remains unchanged." ¶49. Nevertheless, the continued declines in the Health Care Benefits segment caused the price of CVS stock to decline by $0.96 per share, or nearly 1.3%, closing at $74.36 per share on February 8, 2024. ¶47.

Finally, on May 1, 2024, CVS announced earnings for the first quarter of 2024, revealing that its diluted EPS for the quarter declined by nearly 47% over the prior year, to $0.88, from $1.65. CVS primarily attributed that decline to increased utilization in the Company's Medicare business. ¶52. For the same reason, CVS further slashed its diluted EPS guidance to at least $5.64, from at least $7.06, and cut its cash flow from operations guidance to at least $10.5 billion, from at least $12.0 billion. ¶52. On this news, the price of CVS stock plummeted by $11.40 per share, or nearly 17%, closing at $56.31 per share on May 1, 2024. ¶54.

## ARGUMENT

### A.    The Pension Funds Are The Most Adequate Plaintiff

The Pension Funds respectfully submit that they should be appointed Lead Plaintiff because they are the movant "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). When selecting a Lead Plaintiff, the PSLRA establishes a presumption that the "most adequate plaintiff" is the movant that has "the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Chilton v. Chiumento Grp.*, 365 F. App'x 298, 299 (2d

Cir. 2010) (discussing qualifications for Lead Plaintiff presumption).  As set forth below, the Pension Funds believe they are the "most adequate plaintiff" and should be appointed as Lead Plaintiff.

### 1.      The Pension Funds' Motion Is Timely

Under the PSLRA, any Class member may move for appointment as Lead Plaintiff within 60 days of the publication of notice that the first action asserting substantially the same claims has been filed.  *See* 15 U.S.C. § 78u-4(a)(3)(A).  On July 12, 2024, Plaintiff Ivy Nixon filed the first of the Related Actions.  *See Nixon*, ECF No. 1.  On the same day, counsel for Nixon published a notice on *GlobeNewswire*, which alerted investors to the pendency of the action and set the deadline to seek Lead Plaintiff status by September 10, 2024.  *See* Bleichmar Decl. Ex. D. Accordingly, the Pension Funds satisfy the PSLRA's 60-day requirement through the filing of this motion.

### 2.      The Pension Funds Believe They Have The Largest Financial Interest In The Relief Sought By The Class

The Pension Funds believe that they have the "largest financial interest in the relief sought by the class" and thus should be appointed Lead Plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). The Pension Funds incurred a loss of approximately $2.9 million as calculated on a FIFO basis and approximately $2.5 million when calculated on a LIFO basis on their investments in CVS securities during the Class Period.  *See* Bleichmar Decl. Exs. A-B.[5]

---

[5] In addition to losses, courts often consider various other metrics, including what are typically referred to as "*Lax* factors," to further analyze a movant's financial interest when warranted.  *See Lax v. First Merchs. Acceptance Corp.*, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997) (identifying (1) total number of shares purchased; (2) number of net shares purchased; (3) total net funds expended; and (4) approximate losses suffered, as four factors for courts to consider when determining the largest financial interest).  Other courts, including courts in this Circuit, look only to the portion of a movant's loss that is subject to recovery in the litigation.  *See Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 273 (S.D.N.Y. 2015) (citation omitted).  The Pension Funds' PSLRA certifications and loss calculations provide all the trading information necessary to

To the best of the Pension Funds' knowledge, there is no other applicant seeking Lead Plaintiff appointment that has a larger financial interest in this litigation. Accordingly, the Pension Funds believe that they have the largest financial interest of any qualified movant seeking Lead Plaintiff status and are the presumptive "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

### 3.    The Pension Funds Otherwise Satisfy The Requirements Of Rule 23

In addition to possessing the largest financial interest in the outcome of the litigation, the Pension Funds otherwise satisfy the requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). On a motion to serve as Lead Plaintiff, a movant need only "make a preliminary showing that the adequacy and typicality requirements have been met." *Hom v. Vale, S.A.*, 2016 WL 880201, at *6 (S.D.N.Y. Mar. 7, 2016). Here, the Pension Funds unquestionably satisfy both requirements.

The Pension Funds' claims are typical of the claims of other purchasers of CVS securities. Typicality is satisfied where the movant's "claims arise from the same conduct from which the other class members' claims and injuries arise." *Id.* Here, the Pension Funds and all other Class members suffered the same injuries, their claims arise from the same course of events, and their legal arguments to prove Defendants' liability are nearly identical. Like all other Class members, the Pension Funds: (1) purchased CVS securities during the Class Period; (2) at prices artificially inflated by Defendants' materially false and misleading statements and/or omissions; and (3) were damaged as a result. *See id.* (typicality satisfied where movant purchased "shares at artificially inflated prices during the class period, and were injured by the false and misleading statements

---

calculate their financial interests under all possible metrics, including their recoverable losses, and does not presuppose that there is only one valid methodology. *See* Bleichmar Decl. Exs. A-B.

and omissions made by defendants in violation of federal securities laws"). As such, the Pension Funds satisfy the typicality requirement of Rule 23.

The Pension Funds likewise satisfy the adequacy requirement of Rule 23. Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In order for the Class's interests to be fairly and adequately represented, the movant must show that: "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Vale*, 2016 WL 880201, at *6. The Pension Funds satisfy these elements because their substantial financial stake in the litigation provides them with the ability and incentive to vigorously represent the Class's claims. The Pension Funds' interests are directly aligned with those of the other Class members and are not antagonistic in any way. There are no facts to suggest any actual or potential conflict of interest or other antagonism between the Pension Funds and other Class members.

To further demonstrate their ability to litigate this case in the best interests of the Class, the Pension Funds submitted the Joint Declaration, which describes how and why they came to work together in this action. *See* Bleichmar Decl., Ex. C ¶¶9-12. The Joint Declaration also affirms their understanding of the duties owed to the Class, and discusses the Pension Funds' experiences working together and with other institutional investors in securities class action litigation. *See id*. ¶¶3-8, 18. Through the Joint Declaration and their PSLRA Certifications, the Pension Funds have demonstrated that they understand and accept the fiduciary obligations they will assume if appointed Lead Plaintiff and will zealously represent the interests of all Class members. *See* Bleichmar Decl., Exs. A, C.

Finally, the Pension Funds have demonstrated their adequacy through their selection of Bernstein Litowitz and BFA as Lead Counsel to represent the Class in this case. As discussed more fully below, Bernstein Litowitz and BFA are highly qualified and experienced in securities class action litigation and have repeatedly demonstrated an ability to conduct such litigation effectively while working together, including in cases in this District. Accordingly, as demonstrated herein, the Pension Funds satisfy the typicality and adequacy requirements of Rule 23.

4.      **The Pension Funds Are Precisely The Type of Lead Plaintiff Envisioned By The PSLRA**

In addition to satisfying the PSLRA's lead plaintiff provisions and the requirements of Rule 23, the Pension Funds are the paradigmatic Lead Plaintiff envisioned by Congress in its enactment of the PSLRA—sophisticated institutional investors with a substantial financial interest in the litigation. *See Glauser v. EVCI Career Colls. Holding Corp.*, 236 F.R.D. 184, 188 (S.D.N.Y. 2006) (noting that "the PSLRA was passed, at least in part, to increase the likelihood that institutional investors would serve as lead plaintiffs in [securities class] actions") (citation omitted); S. Rep. No. 104-98, at 11 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690 (1995) ("The [c]ommittee intends to increase the likelihood that institutional investors will serve as lead plaintiffs[.]"); H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (1995) (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions").

As set forth in the Joint Declaration, the Pension Funds have also demonstrated their commitment and ability to work together cohesively in the prosecution of this action. *See generally* Bleichmar Decl., Ex. C. The text of the PSLRA expressly permits the appointment of a

9

group of class members to serve as lead plaintiff.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *id.* § 78u-4(a)(3)(B)(i).  Accordingly, courts in this District as well as others in the Second Circuit and throughout the country have repeatedly recognized the propriety of appointing groups of investors that "are able to 'function cohesively and to effectively manage the litigation apart from their lawyers.'" *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 270 (S.D.N.Y. 2009) (appointing group of institutional investors) (citation omitted); *see also Mustafin v. GreenSky, Inc.*, 2019 WL 1428594, at *5 (S.D.N.Y. Mar. 29, 2019) (appointing "coalition of three institutional investors" that "demonstrated their intent to participate directly in this litigation and their willingness and ability to serve as class representatives").

The Joint Declaration also sets forth the reasons why the Pension Funds decided to collaborate in this litigation, describes how the group was formed, and establishes how the Pension Funds intend to oversee counsel and this litigation.  *See generally* Bleichmar Decl., Ex. C.  As reflected in the Joint Declaration, prior to seeking appointment as Lead Plaintiff, representatives of the Pension Funds consulted with their respective counsel regarding the merits of the claims against Defendants and the potential to seek a leadership role in this matter.  *See id.* ¶10.  As part of that consultation, the Pension Funds also considered whether there was an opportunity to work with other institutional investors in seeking Lead Plaintiff appointment, and whether doing so would be in each of their respective interests and in the best interests of the Class.  *See id.* ¶¶11-12.

Given the Pension Funds' significant history of success working together as part of lead plaintiff groups to prosecute securities claims, as well as Louisiana Sheriffs' and SEPTA's pre-existing relationship working together in such cases, the Pension Funds agreed that their partnership would benefit the representation of the Class here.  *See id.* ¶¶3-8, 11-12.  For instance,

10

Louisiana Sheriffs and SEPTA served together as lead plaintiff alongside another institutional investor in *In re Wachovia Preferred Securities and Bond/Notes Litigation*, No. 09-cv-6351 (S.D.N.Y.), in which they achieved a $627 million recovery for investors. Additionally, in *In re Wells Fargo Mortgage-Backed Certificates Litigation*, No. 09-cv-1376-LHK (N.D. Cal.), Louisiana Sheriffs, as a co-lead plaintiff, and SEPTA, as a named plaintiff, worked together with other institutional investors to recover $125 million for investors. *See* Bleichmar Decl., Ex. C ¶6.

Most recently, Louisiana Sheriffs served as lead plaintiff alongside three other institutional investors in *In re Wells Fargo & Co. Securities Litigation*, No. 20-cv-4494-JLR (S.D.N.Y.), and recovered $1 billion for investors. Louisiana Sheriffs also served as lead plaintiff together with six other institutional investors in *In re Citigroup Inc. Bond Action Litigation*, No. 08-cv-9522-SHS (S.D.N.Y.), and secured a $730 million recovery for investors. *See* Bleichmar Decl., Ex. C ¶3.

Likewise, Miami FIPO served as lead plaintiff together with another institutional investor in *In re Quality Systems, Inc. Securities Litigation*, No. 13-cv-1818-CJC (C.D. Cal.), and achieved a $19 million recovery for investors. *See* Bleichmar Decl., Ex. C ¶8. Miami FIPO also served as co-lead plaintiff in *In re Penn West Petroleum Ltd. Securities Litigation*, No. 14-cv-6046-JGK (S.D.N.Y.), and recovered $19.8 million for investors. *See* Bleichmar Decl., Ex. C ¶8. Based on the Pension Funds' experiences litigating these and other cases as part of a small, cohesive group of institutional investors, the Pension Funds believe that their partnership will add substantial value to the prosecution of this action and inure to the benefit of the Class. *See* Bleichmar Decl., Ex. C ¶¶11-12. The Pension Funds also determined to seek joint appointment as Lead Plaintiff because of their roles as fiduciaries and their shared goals and interests in protecting and maximizing pension fund assets. *See id.* ¶11; *see also In re Bank of Am.*, 258 F.R.D. at 270 ("Groups of

11

plaintiffs are specifically permitted by the [PSLRA] to be appointed lead plaintiff . . . Because they have established their ability to act independent of counsel, [the institutional investors] are a proper group and are presumptive lead plaintiffs").

The Joint Declaration also demonstrates that the Pension Funds have already taken (and will continue to take) measures to ensure the vigorous prosecution of this action and oversee their counsel. Before seeking appointment as Lead Plaintiff, representatives of the Pension Funds participated in a conference call in which they discussed, among other things: the facts and the merits of the claims against Defendants; the losses arising from Defendants' alleged misconduct; the strategy for the prosecution of this litigation; their shared interest in serving jointly as Lead Plaintiff in this case and their commitment to take an active role in supervising the prosecution of the action; and the benefits that the Class would receive from their joint leadership of the case. *See id.* ¶13. The Pension Funds' representatives also discussed the importance of joint decision-making and maintaining open lines of communication and put in place procedures that will enable each of them to confer, with or without their counsel, to ensure that they are able to make timely decisions. *See id.* ¶14. Through these and other measures, the Pension Funds have sought to ensure that the Class will receive the best possible representation.

The evidence submitted by the Pension Funds establishing their commitment to zealously and efficiently represent the interests of the Class is more than sufficient to satisfy the adequacy and typicality requirements here. The Pension Funds have demonstrated that they have ample willingness, resources, and experience, and are committed to working closely with one another to supervise Lead Counsel and obtain the best possible recovery for the Class. *See, e.g.*, *GreenSky*, 2019 WL 1428594, at *5 (appointing group of three institutions that "pledge[d] to work closely together to vigorously prosecute the claims on behalf of the class"); *Reimer v. Ambac Fin. Grp.*,

12

*Inc.*, 2008 WL 2073931, at \*3 (S.D.N.Y. May 9, 2008) (appointing group of three institutions that demonstrated they were "cooperating and pursuing the litigation separately and apart from their lawyers"); *In re Bank of Am.*, 258 F.R.D. at 270 (appointing group of institutions as lead plaintiff that submitted declaration detailing discussions regarding "plans for joint oversight over the litigation and joint supervision of counsel").

**B.      The Pension Funds Selected Well-Qualified Lead Counsel To Represent The Class**

The PSLRA provides that the Lead Plaintiff is to select and retain counsel to represent the Class it seeks to represent, subject to Court approval.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  The Lead Plaintiff's choice of counsel is not to be disturbed unless doing so is necessary to "protect the interests of the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Bernstein Litowitz is among the preeminent securities class action law firms in the country.  *See* Bleichmar Decl., Ex. E (Bernstein Litowitz's Firm Résumé).   Bernstein Litowitz served as Lead Counsel in *In re WorldCom, Inc. Securities Litigation*, No. 02-cv-3288-DLC (S.D.N.Y.), in which recoveries totaling in excess of $6 billion—one of the largest recoveries in securities class action history and the largest in this District—were obtained for the class.   Other significant examples in which courts in this District have recognized Bernstein Litowitz as adequate and qualified class counsel in securities class actions include: *In re Bank of America Corp. Securities, Derivative & ERISA Litigation*, No. 09-md-2058-PKC (S.D.N.Y.) ($2.43 billion recovery); *In re Nortel Networks Corp. Securities Litigation*, No. 05-md-1659-LAP (S.D.N.Y.) ($1.3 billion recovery); and *In re Wells Fargo & Co. Securities Litigation*, No. 20-cv-4494-JLR (S.D.N.Y.) ($1 billion recovery).

Similarly, BFA is among the foremost securities class action law firms in the country. BFA's partners have served as lead and co-lead counsel on behalf of dozens of investors in

13

securities class actions and have secured significant recoveries on behalf of investors in some of the most prominent fraud cases in recent decades. *See* Bleichmar Decl. Ex. F (BFA's Firm Résumé). For example, BFA recently achieved a $420 million resolution on behalf of investors in *Ontario Teachers' Pension Plan Board v. Teva Pharmaceuticals Industries Ltd.*, No. 3:17-cv-00558-SRU (D. Conn.), as well as a $129 million resolution on behalf of investors in *The Police Retirement System of St. Louis v. Granite Construction Inc.*, No. 3:19-cv-04744-WHA (N.D. Cal.). Previously, BFA secured a $120 million recovery in *Freedman v. Weatherford Int'l Ltd.*, No. 1:12-cv-02121-LAK (S.D.N.Y.).

Bernstein Litowitz and BFA also have significant experience achieving substantial recoveries for investors when serving together as lead counsel. For instance, in this District, Bernstein Litowitz and BFA served together as lead counsel in *In re MF Global Holdings Ltd. Sec. Litigation*, No. 1:11-cv-07866-VM (S.D.N.Y.) and achieved a $234 million resolution for the benefit of the class. The firms also collaborated as lead counsel in *In re Genworth Financial, Inc. Securities Litigation*, 3:14-cv-00682-JAG (E.D. Va.), and secured a $219 million resolution which represents the largest securities class action recovery ever achieved in the Eastern District of Virginia. Thus, the Court may be assured that by granting this motion, the Class will receive the highest caliber of legal representation.

### C.      The Related Actions Should Be Consolidated

There are two Related Actions pending in this District against Defendants:

| Case | Civil No. | Date Filed |
|------|-----------|------------|
| *Nixon v. CVS Health Corp.* | 1:24-cv-05303 | July 12, 2024 |
| *Tatone v. CVS Health Corp.* | 1:24-cv-06771 | September 6, 2024 |

These actions present substantially similar factual and legal issues because they each allege claims under Sections 10(b) and 20(a) of the Exchange Act, against the same defendants, relating to similar periods of time, and are premised on similar types of misstatements. Rule 42(a) grants

14

broad discretion to courts to consolidate cases that involve common questions of law or fact, as here. While *Tatone* asserts a broader class period as compared to *Nixon*, this minor difference does not render consolidation inappropriate because such minor differences in the pleadings do not outweigh the interests of judicial economy served by consolidation. *See In re Bank of Am.*, 258 F.R.D. at 268 ("[d]ifferences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation"). Accordingly, the Pension Funds respectfully request that the Related Actions be consolidated.

## CONCLUSION

For the reasons discussed above, the Pension Funds respectfully request that the Court: (1) appoint them to serve as Lead Plaintiff; (2) approve their selection of Bernstein Litowitz and BFA to serve as Lead Counsel for the putative Class; (3) consolidate the Related Actions; and (4) grant any such further relief as the Court may deem just and proper.

Dated: September 10, 2024

Respectfully submitted,

**BLEICHMAR FONTI & AULD LLP**

  */s/ Javier Bleichmar*
Javier Bleichmar
Erin H. Woods
300 Park Avenue, Suite 1301
New York, New York 10022
Telephone: (212) 789-1341
Facsimile: (212) 205-3960
jbleichmar@bfalaw.com
ewoods@bfalaw.com

-and-

Ross Shikowitz
75 Virginia Road
White Plains, New York 10603
Telephone: (914) 265-2991
Facsimile: (212) 205-3960
rshikowitz@bfalaw.com

**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**
Hannah Ross
Avi Josefson
Scott R. Foglietta
1251 Avenue of the Americas, 44th Floor
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
hannah@blbglaw.com
avi@blbglaw.com
scott.foglietta@blbglaw.com

*Counsel for Proposed Lead Plaintiff the Pension Funds and Proposed Lead Counsel for the Class*

**KLAUSNER, KAUFMAN, JENSEN &
  LEVINSON**
Robert D. Klausner
Stuart A. Kaufman
7080 Northwest 4th Street
Plantation, Florida 33317
Telephone: (954) 916-1202

16

Facsimile: (954) 916-1232
bob@robertdklausner.com
stu@robertdklausner.com

*Additional Counsel for Louisiana Sheriffs'*
*Pension & Relief Fund and City of Miami Fire*
*Fighters' & Police Officers' Retirement Trust*

**KEHOE LAW FIRM, P.C.**
John A. Kehoe
2001 Market Street
Suite 2500
Philadelphia, Pennsylvania 19103
Telephone: (215) 992-6676
jkehoe@kehoelawfirm.com

*Additional Counsel for Southeastern*
*Pennsylvania Transportation Authority*

17