UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IVY NIXON, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> CVS HEALTH CORPORATION, KAREN S. LYNCH, SHAWN M. GUERTIN, and THOMAS F. COWHEY, <br><br> Defendants. | Case No.  1:24-cv-05303-MMG <br><br> ORAL ARGUMENT REQUESTED |
| ORLANDO TATONE, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> CVS HEALTH CORPORATION, KAREN S. LYNCH, SHAWN M. GUERTIN, and THOMAS F. COWHEY, <br><br> Defendants. | Case No.  1:24-cv-06771-UA |

MEMORANDUM OF LAW IN SUPPORT OF MOTION OF LANCASTER PARTNER LLC
FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF,
AND APPROVAL OF CO-LEAD COUNSEL

TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ...................................................................................................... 3

ARGUMENT.......................................................................................................................... 6

I.      THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES.. 6

II.     LANCASTER PARTNER SHOULD BE APPOINTED LEAD PLAINTIFF.................. 8

        A.      Lancaster Partner Is Willing to Serve as Class Representative .............................. 9

        B.      Lancaster Partner Has the "Largest Financial Interest"......................................... 9

        C.      Lancaster Partner Otherwise Satisfies the Requirements of Rule 23 ................... 10

        D.      Lancaster Partner Will Fairly and Adequately Represent the Interests of the Class
                and Is Not Subject to Unique Defenses ................................................................. 13

III.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED ......... 14

CONCLUSION...................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aude v. Kobe Steel, Ltd.*, No. 17-CV-10085 (VSB),
   2018 WL 1634872 (S.D.N.Y. Apr. 4, 2018)...........................................................................11

*Bassin v. Decode Genetics, Inc.*,
   230 F.R.D. 313 (S.D.N.Y. 2005) ...............................................................................................7

*Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*,
   141 F.R.D. 229 (S.D.N.Y. 1992) .............................................................................................12

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
   252 F.R.D. 188 (S.D.N.Y. 2008) ...............................................................................................7

*Chahal v. Credit Suisse Grp. AG*, No. 18-CV-2268 (AT) (SN),
   2018 WL 3093965 (S.D.N.Y. June 21, 2018) .........................................................................10

*Dookeran v. Xunlei Ltd.*, No. 18-cv-467 (RJS),
   2018 WL 1779348 (S.D.N.Y. Apr. 12, 2018)..........................................................................12

*Fischler v. AMSouth Bancorporation*, No. 96-1567-Civ-T-17A,
   1997 WL 118429 (M.D. Fla. Feb. 6, 1997) .............................................................................11

*Foley v. Transocean Ltd.*,
   272 F.R.D. 126 (S.D.N.Y. 2011) .............................................................................................12

*Gluck v. CellStar Corp.*,
   976 F. Supp. 542 (N.D. Tex. 1997) .........................................................................................11

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001).....................................................................................................10

*In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER),
   2007 WL 680779 (E.D.N.Y. Mar. 2, 2007)..............................................................................10

*In re Drexel Burnham Lambert Grp., Inc.*,
   960 F.2d 285 (2d Cir. 1992)....................................................................................................11

*In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC),
   2009 WL 2259502 (S.D.N.Y. July 29, 2009) ...........................................................................7

*In re Molson Coors Brewing Co. Sec. Litig.*,
   233 F.R.D. 147 (D. Del. 2005) ................................................................................................14

*In re Olsten Corp. Sec. Litig.*,
    3 F. Supp. 2d 286 (E.D.N.Y. 1998) ......................................................................10, 11

*In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS),
    2008 WL 2811358 (S.D.N.Y. July 7, 2008) ...............................................................11

*In re Oxford Health Plans, Inc. Sec. Litig.*,
    182 F.R.D. 42 (S.D.N.Y. 1998) .................................................................................11

*In re Tronox, Inc. Sec. Litig.*,
    262 F.R.D. 338 (S.D.N.Y. 2009) .................................................................................6

*Janbay v. Canadian Solar, Inc.*,
    272 F.R.D. 113 (S.D.N.Y. 2010) ...............................................................................11

*Kaplan v. Gelfond*,
    240 F.R.D. 88 (S.D.N.Y. 2007) .................................................................................11

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
    311 F.R.D. 373 (S.D.N.Y. 2015) ...............................................................................14

*Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715,
    1997 WL 461036 (N.D. Ill. Aug. 6, 1997) ..............................................................9, 10

*Malcolm v. Nat'l Gypsum Co.*,
    995 F.2d 346 (2d Cir. 1993).........................................................................................6

*Nurlybaev v. ZTO Express (Cayman) Inc.*, No. 17-CV-06130 (LTS) (SN),
    2017 WL 5256769 (S.D.N.Y. Nov. 13, 2017).............................................................10

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
    229 F.R.D. 395 (S.D.N.Y. 2004) ...............................................................................10

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
    589 F. Supp. 2d 388 (S.D.N.Y. 2008)........................................................................14

**Statutes**

15 U.S.C. § 78u-4 ...............................................................................................1, 8

Private Securities Litigation Reform Act of 1995 ............................................1, 2, 8, 13

Securities Exchange Act of 1934............................................................... *passim*

**Rules**

Fed. R. Civ. P. 23................................................................................... *passim*

Fed. R. Civ. P. 42....................................................................................1, 2, 6

iii

Lancaster Partner LLC ("Lancaster Partner") respectfully submits this memorandum of law in support of its motion, pursuant to Federal Rule of Civil Procedure 42 ("Rule 42") and Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for the entry of an Order: (1) consolidating the above-captioned related actions (the "Related Actions"); (2) appointing Lancaster Partner as Lead Plaintiff on behalf of a class (the "Class") consisting of persons and entities that purchased or otherwise acquired CVS Health Corporation ("CVS" or the "Company") securities between February 9, 2022 and April 30, 2024, inclusive (the "Class Period"); and (3) approving proposed Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") and the Schall Law Firm ("Schall") as Co-Lead Counsel for the Class.[1]

PRELIMINARY STATEMENT

The Complaints in the Related Actions allege that the above-captioned defendants ("Defendants") defrauded investors in violation of the Exchange Act. CVS investors, including Lancaster Partner, incurred significant losses following the disclosure of Defendants' alleged fraud, which caused CVS's share price to fall sharply, damaging Lancaster Partner and other CVS investors.

---

[1] On July 12, 2024, the first-filed of the Related Actions was filed in this Court, styled *Nixon v. CVS Health Corporation et al.*, No. 1:24-cv-05303 (S.D.N.Y.) (the "*Nixon* Action"), alleging a class period including all persons and entities that purchased or otherwise acquired CVS securities between May 3, 2023 and April 30, 2024, inclusive. *See* Dkt. No. 1 at 1 ¶ 1. Then, on September 6, 2024, the second-filed of the Related Actions was filed in this Court, styled *Tatone v. CVS Health Corporation et al.*, No. 1:24-cv-06771 (S.D.N.Y.) (the "*Tatone* Action"), alleging substantially the same wrongdoing as the *Nixon* Action against the same defendants, on behalf of a class consisting of all persons and entities that purchased or otherwise acquired CVS securities between February 9, 2022 and April 30, 2024, inclusive. *See Tatone* Action, Dkt. No. 1 at 1 ¶ 1. Therefore, without conceding that this is the appropriate class period, to avoid excluding any potential class members, this motion has adopted the larger class period alleged in the *Tatone* Action.

1

Consolidation is appropriate under Rule 42(a) where actions involve common questions of law or fact.  Here, the Related Actions are putative class actions alleging violations of the Exchange Act by the same defendants arising from substantially the same alleged fraud.  As such, the Related Actions involve common questions of both law ***and*** fact, and consolidation is plainly warranted.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant that possesses the largest financial interest in the outcome of the litigation and that satisfies the requirements of Federal Rule of Civil Procedure 23 ("Rule 23").   15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  During the Class Period, Lancaster Partner purchased 148,296 shares of CVS stock and 2,588 CVS options contracts, expended $13,406,950 on these purchases, retained 21,000 of its shares of CVS stock, and, as a result of the disclosure of Defendants' alleged fraud, incurred losses of approximately $785,974 in connection with its Class Period transactions in CVS securities.  *See* Declaration of Jeremy A. Lieberman in Support of Motion ("Lieberman Decl."), Exhibit ("Ex.") A.  Accordingly, Lancaster Partner believes that it has the largest financial interest in the relief sought in this litigation.  Beyond its considerable financial interest, Lancaster Partner also meets the applicable requirements of Rule 23 because its claims are typical of absent Class members and because it will fairly and adequately represent the interests of the Class.

To fulfill its obligations as Lead Plaintiff and vigorously prosecute the Related Actions on behalf of the Class, Lancaster Partner has selected Pomerantz and Schall as Co-Lead Counsel for the Class.  Pomerantz and Schall are highly experienced in the areas of securities litigation and class actions and have successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firms' resumes.

Accordingly, Lancaster Partner respectfully requests that the Court enter an Order consolidating the Related Actions, appointing Lancaster Partner as Lead Plaintiff for the Class, and approving its selection of Pomerantz and Schall as Co-Lead Counsel for the Class.

STATEMENT OF FACTS

As alleged in the Complaints in the Related Actions, CVS is a healthcare company that operates through three primary segments: Health Care Benefits, Health Services, and Pharmacy & Consumer Wellness. The Health Care Benefits segment purportedly offers "a broad range of traditional, voluntary and consumer-directed health insurance products and related services, including medical, pharmacy, dental and behavioral health plans, medical management capabilities, Medicare Advantage and Medicare Supplement plans, [prescription drug plans ("PDPs")] and Medicaid health care management services." The Health Care Benefits segment's revenues consist almost entirely of insurance premiums paid by customers.

The pricing and other terms of the Company's private health insurance plans are typically determined in advance of a plan's policy period, which is typically one year. CVS determines premiums for these plans based on internal forecasts that consider historical data and the profitability of which are dependent on the Company's ability to accurately model, among other things, medical cost trends and health care utilization patterns. Generally, a fixed premium rate is determined at the beginning of the policy period. To the extent that unmodeled-for increases in the costs of health care and other benefits arise during a given policy period, CVS is ultimately responsible for the payment of those costs. Accordingly, the profitability of the Health Care Benefits segment is particularly sensitive to the accuracy of its cost forecasts.

Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies. Specifically,

3

Defendants made false and/or misleading statements and/or failed to disclose that: (i) the forecasts CVS used to determine plan premiums were ineffective at accounting for medical cost trends and health care utilization patterns; (ii) as a result, CVS was likely to incur significant expenses to cover cost increases that were not accounted for in the Company's forecasts and thus not covered by plan premiums; (iii) accordingly, CVS had overstated the profitability of its Health Care Benefits segment; (iv) contrary to Defendants' assurances, the revenues generated from the Company's other primary segments were insufficient to offset the negative financial impact of the increasing expenditures within the Health Care Benefits segment; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

On August 2, 2023, CVS issued a press release announcing the Company's results for the quarter ended June 30, 2023, which revealed that the Company was revising its diluted earnings-per-share ("EPS") guidance range to $6.53 to $6.75 from $6.90 to $7.12. In a Quarterly Report filed on Form 10-Q the United States Securities and Exchange Commission ("SEC") that same day, CVS stated that operating income, which has a direct impact on EPS, "decreased $1.4 billion, or 30.7%, in the three months ended June 30, 2023 compared to the prior year primarily due to declines in the Health Care Benefits segment[.]"

On this news, CVS's stock price fell $2.04 per share, or 2.73%, to close at $72.32 per share on August 3, 2023.

Then, on November 1, 2023, CVS issued a press release announcing the Company's results for the quarter ended September 30, 2023, which revealed that the Company was again reducing its diluted EPS guidance range to $6.37 to $6.61 from $6.53 to $6.75. In a Quarterly Report filed on Form 10-Q with the SEC that same day, CVS stated that while operating income

4

increased "in the nine months ended September 30, 2023 compared to the prior year [. . .] [t]hese increases in operating income were partially offset by declines in the Health Care Benefits segment."

Then, on February 7, 2024, CVS issued a press release announcing the Company's results for the year ended December 31, 2023 which revealed that the Company was revising its diluted EPS guidance range to at least $7.06 from at least $7.26, its adjusted EPS guidance range to at least $8.30 from at least $8.50, and its cash flow from operations guidance to at least $12.0 billion from at least $12.5 billion.  In an Annual Report filed on Form 10-K with the SEC that same day reporting the Company's financial and operational results for the year ended December 31, 2023, CVS stated that, while operating income increased in 2023 compared to 2022, "[t]hese increases in operating income were partially offset by declines in the Health Care Benefits segment."  Moreover, in a conference call held with investors and analysts that same day to discuss the Company's 2023 results, CVS's Chief Financial Officer Defendant Thomas F. Cowhey stated, in relevant part, "we now expect adjusted operating income for the Healthcare Benefit segment to be at least $5.4 billion, a decrease of $370 million from our prior estimates."

On this news, CVS's stock price fell $0.96 per share, or 1.27%, to close at $74.36 per share on February 8, 2024.

Finally, on May 1, 2024, CVS issued a press release reporting its results for the quarter ended March 31, 2024 and revising its full-year 2024 guidance.  Among other items, CVS reported $88.4 billion in revenue, missing expectations of $89 billion.  The Company stated that higher utilization of healthcare services, meaning more insurance dollars spent, weighed on its results in addition to Medicare reimbursement rate cuts that will continue to pressure CVS for the remainder of the year.  Accordingly, CVS issued revised full-year 2024 guidance, including

5

"[r]evised GAAP diluted EPS guidance to at least $5.64 from at least $7.06"; "[r]evised Adjusted EPS guidance to at least $7.00 from at least $8.30"; and "[r]evised cash flow from operations guidance to at least $10.5 billion from at least $12.0 billion".  Further, in a Quarterly Report filed on Form 10-Q with the SEC that same day, CVS stated that operating income decreased $1.2 billion, or 34.1% "in in the three months ended March 31, 2024, primarily due to increased Medicare utilization, the unfavorable impact of the previously disclosed decline in the Company's 2024 Medicare Advantage star ratings and a year-over-year unfavorable impact from development of prior-years' health care cost estimates in the Health Care Benefits segment."

On this news, CVS's stock price fell $11.40 per share, or 16.84%, to close at $56.31 per share on May 1, 2024.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, the plaintiffs in the Related Actions and other Class members have suffered significant losses and damages.

## ARGUMENT

I.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

Consolidation of related cases is appropriate where, as here, the actions involve common questions of law and fact, and therefore consolidation would avoid unnecessary cost, delay, and overlap in adjudication: "If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay."  Fed. R. Civ. P. 42(a); *see also Manual for Complex Litigation (Third)* § 20.123 (1995).

Consolidation is appropriate when the actions before the court involve common questions of law *or* fact.  *See* Fed. R. Civ. P. 42 (a); *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990)); *In re Tronox,*

6

*Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009) (consolidating securities class actions); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 190 (S.D.N.Y. 2008) (same). Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interest of judicial economy served by consolidation. *See In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC), 2009 WL 2259502, at \*1-3 (S.D.N.Y. July 29, 2009) (consolidating actions asserting different claims against different defendants over different class periods).

The Related Actions at issue here clearly involve common questions of law ***and*** fact. Each action is brought against the same defendants in connection with violations of Sections 10(b) and 20(a) of the Exchange Act, and Rule 10b-5 promulgated thereunder. Accordingly, the Related Actions allege substantially the same wrongdoing, namely that Defendants issued materially false and misleading statements and omissions that artificially inflated the prices of CVS's securities and subsequently damaged the Class when the Company's share price plummeted as the truth emerged. Consolidation of the Related Actions is therefore appropriate. *See Bassin v. Decode Genetics, Inc.*, 230 F.R.D. 313, 315 (S.D.N.Y. 2005) (consolidation of securities class actions is particularly appropriate in the context of securities class actions where the complaints are based on the same statements and the defendants will not be prejudiced); *GE*, 2009 WL 2259502, at \*2 ("Consolidation promotes judicial convenience and avoids unnecessary costs to the parties.").

## II.    LANCASTER PARTNER SHOULD BE APPOINTED LEAD PLAINTIFF

Lancaster Partner should be appointed Lead Plaintiff because it has timely filed a motion for appointment as Lead Plaintiff, has the largest financial interest in this litigation to its knowledge, and otherwise strongly satisfies the requirements of Rule 23.

The PSLRA requires the plaintiff who files an action governed by its provisions to publish a notice (the "Notice") to the class within 20 days of filing the action, informing putative class members of: (1) the pendency of the action; and (2) their right to file a motion for appointment as lead plaintiff within 60 days after publication of the Notice.  *See* 15 U.S.C. § 78u-4(a)(3)(A)(i).  In addition, the PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to the Notice and to do so by the later of (1) 90 days after the date of publication, or (2) as soon as practicable after the Court decides any pending motion to consolidate.  *See id.* § 78u-4(a)(3)(B).

Pursuant to the PSLRA, the Court "shall appoint" the "most adequate plaintiff" to serve as lead plaintiff.  *Id.* § 78u-4(a)(3)(B)(i).  The PSLRA provides a "[r]ebuttable presumption" that the "most adequate plaintiff" is the person or group that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Lancaster Partner satisfies all three of these criteria and thus is entitled to the presumption that it is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

8

A.       Lancaster Partner Is Willing to Serve as Class Representative

On July 12, 2024, Pomerantz, counsel for plaintiff in the *Nixon* Action, caused the statutorily required Notice of this litigation to be published via *Globe Newswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, which announced that a securities class action had been filed against CVS and other defendants, and which advised investors in CVS securities that they had 60 days from the date of the Notice's publication—*i.e.*, until September 10, 2024—to file a motion to be appointed as lead plaintiff. *See* Lieberman Decl., Ex. B.

Lancaster Partner has filed the instant motion pursuant to the Notice and has attached a Certification executed on its behalf by Joseph Herzig ("Herzig"), a Member of Lancaster Partner with authority to bind Lancaster Partner and enter into litigation on its behalf, attesting that it is willing to serve as a representative for the Class and to provide testimony at deposition and trial, if necessary. *See id.*, Ex. C. Accordingly, Lancaster Partner satisfies the first requirement to serve as Lead Plaintiff of the Class.

B.       Lancaster Partner Has the "Largest Financial Interest"

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). To the best of its knowledge, Lancaster Partner has the largest financial interest of any CVS investor or investor group seeking to serve as Lead Plaintiff. For claims arising under Section 10(b) of the Exchange Act, courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period (also referred to as "retained shares"); (3) the total net funds expended during the class period; and (4) the

9

approximate losses suffered.  No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 6, 1997).

In accord with other courts nationwide,[2] these so-called *Lax* factors have been adopted and

routinely applied by courts in this District.  *See, e.g.*, *Chahal v. Credit Suisse Grp. AG*, No. 18-

CV-2268 (AT) (SN), 2018 WL 3093965, at *4 (S.D.N.Y. June 21, 2018); *Nurlybaev v. ZTO*

*Express (Cayman) Inc.*, No. 17-CV-06130 (LTS) (SN), 2017 WL 5256769, at *1 (S.D.N.Y. Nov.

13, 2017); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229

F.R.D. 395, 404-05 (S.D.N.Y. 2004).

During the Class Period, Lancaster Partner: (1) purchased 148,296 shares of CVS stock

and 2,588 CVS options contracts; (2) expended $13,406,950 on these purchases; (3) retained

21,000 of its shares of CVS stock; and (4) as a result of the disclosure of Defendants' alleged

fraud, incurred losses of approximately $785,974 in connection with its Class Period transactions

in CVS securities.  *See* Lieberman Decl., Ex. A.  To the extent that Lancaster Partner possesses

the largest financial interest in the outcome of this litigation, it is the presumptive "most

adequate" plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

      C.      Lancaster Partner Otherwise Satisfies the Requirements of Rule 23

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to

possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must

"otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  Rule

23(a) provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there
> are questions of law or fact common to the class; (3) the claims or defenses of the
> representative parties are typical of the claims or defenses of the class; and (4) the
> representative parties will fairly and adequately protect the interests of the class.

---

[2] *See, e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *accord In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2007 WL 680779, at *6-8 (E.D.N.Y. Mar. 2, 2007).

Fed. R. Civ. P. 23(a).

In making its determination that a lead plaintiff movant satisfies Rule 23's requirements, the Court need not raise its inquiry to the level required in ruling on a motion for class certification. Instead, "[t]he parties moving for lead plaintiff are only required to make a prima facie showing that they meet [the requirements of] Rule 23." *Aude v. Kobe Steel, Ltd.*, No. 17-CV-10085 (VSB), 2018 WL 1634872, at *3 (S.D.N.Y. Apr. 4, 2018)); *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007) ("[A]t this stage of the litigation, only a preliminary showing of typicality and adequacy is required."). In addition, "[t]ypicality and adequacy of representation are the only provisions [of Rule 23] relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) (citing *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997), and *Fischler v. AMSouth Bancorporation*, No. 96-1567-Civ-T-17A, 1997 WL 118429, at *2 (M.D. Fla. Feb. 6, 1997)); *Olsten*, 3 F. Supp. 2d at 296. Moreover, the Complaints in the Related Actions sufficiently plead Rule 23(a)(1) numerosity and Rule 23(a)(2) common questions in a manner common to all Class members, including Lancaster Partner.

The typicality requirement of Rule 23(a)(3) "is satisfied if 'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS), 2008 WL 2811358, at *5 (S.D.N.Y. July 7, 2008) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). "[T]he claims of the class representative need not be identical [to] those of all members of the class. '[T]he typicality requirement may be satisfied even if there are factual dissimilarities or variations between the claims of the named plaintiffs and those of other class members, including distinctions in the qualifications of the class members.'" *Janbay v.*

11

*Canadian Solar, Inc.*, 272 F.R.D. 113, 120 (S.D.N.Y. 2010) (quoting *Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*, 141 F.R.D. 229, 238 (S.D.N.Y. 1992)).

Lancaster Partner's claims are typical of those of the Class. Lancaster Partner alleges, like other Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning CVS, or by omitting to state material facts necessary to make the statements they did make not misleading. Lancaster Partner, like other Class members, purchased CVS securities during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and was damaged upon the disclosure of those misrepresentations and/or omissions that drove CVS's share price downward. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011); *see also Dookeran v. Xunlei Ltd.*, No. 18-cv-467 (RJS), 2018 WL 1779348, at *2 (S.D.N.Y. Apr. 12, 2018) (same).

As set forth in greater detail below, in Pomerantz and Schall, Lancaster Partner has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as these Related Actions, and submits its choice of Pomerantz and Schall to the Court for approval as Co-Lead Counsel for the Class pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v). There is no evidence of antagonism or conflict between Lancaster Partner's interests and those of

the Class. Moreover, Lancaster Partner has submitted a signed Certification declaring its commitment to protect the interests of the Class (*see* Lieberman Decl., Ex. C), and its significant financial interest demonstrates that it has a sufficient interest in the outcome of this litigation to ensure vigorous advocacy.

Further demonstrating its adequacy, Lancaster Partner has submitted a Declaration executed by Herzig, in his capacity as Member, attesting to, *inter alia*, his background, his investing experience, his understanding of the responsibilities of a Lead Plaintiff appointed pursuant to the PSLRA, his decision to seek Lancaster Partner's appointment as Lead Plaintiff, and the steps that he is prepared to take on Lancaster Partner's behalf to prosecute this litigation on behalf of the Class. *See id.*, Ex. D.

D.    Lancaster Partner Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses

The presumption in favor of appointing Lancaster Partner as Lead Plaintiff may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

(aa)    will not fairly and adequately protect the interests of the class; or

(bb)    is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Lancaster Partner's ability and desire to fairly and adequately represent the Class has been discussed above. Lancaster Partner is not aware of any unique defenses Defendants could raise that would render it inadequate to represent the Class. Accordingly, Lancaster Partner should be appointed Lead Plaintiff for the Class.

III.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to Court approval. *See id.* § 78u-4(a)(3)(B)(v). The Court should only interfere with a lead plaintiff's choice if necessary to "protect the interests of the class." *Id.* § 78u-4(a)(3)(B)(iii)(II)(aa); *see also Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008))); *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 151 (D. Del. 2005).

Here, Lancaster Partner has selected Pomerantz and Schall as Co-Lead Counsel for the Class. Pomerantz is highly experienced in the areas of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in its firm resume submitted herewith. *See* Lieberman Decl., Ex. E. In overview, Pomerantz is a premier firm in the area of securities litigation based in New York, with offices in Chicago, Los Angeles, Paris, France, London, the U.K., and Tel Aviv, Israel. *See id.* For more than 85 years, Pomerantz has represented defrauded investors. *See id.* As lead counsel in *In re Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), Pomerantz secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the largest settlement ever in a class action involving a foreign issuer and the fifth largest class action settlement ever achieved in the United States. *See id.* Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 1:06-cv-01825 (E.D.N.Y.), in June 2010, and the $90

14

million settlement in *Klein v. Altria Group, Inc. et al*, No. 3:20-cv-00075 (E.D. Va.) in March 2022. *Id.*

Schall likewise possesses a high degree of skill and professionalism, and has a history of successfully litigating complex matters, including several securities class actions throughout the United States. *See id.*, Ex. F. Indeed, while serving as co-counsel, Schall played an integral role in *Erickson, et al. v. Snap, Inc., et al.*, No. 17-cv-03679 (C.D. Cal.), securing the second largest securities class action settlement recovery in the United States in 2021. *See id.*

As a result of its extensive experience in litigation involving issues similar to those raised in these Related Actions, Lancaster Partner's counsel, Pomerantz and Schall, have the skill, knowledge, expertise, and experience that will enable the firms to prosecute these Related Actions effectively and expeditiously. Thus, the Court may be assured that by approving Lancaster Partner's selection of Pomerantz and Schall as Co-Lead Counsel, the members of the Class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, Lancaster Partner respectfully requests that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing Lancaster Partner as Lead Plaintiff for the Class; and (3) approving Lancaster Partner's selection of Pomerantz and Schall as Co-Lead Counsel for the Class.

Dated:  September 10, 2024                Respectfully submitted,

                                          POMERANTZ LLP

                                          */s/ Jeremy A. Lieberman*
                                          Jeremy A. Lieberman
                                          J. Alexander Hood II
                                          Thomas H. Przybylowski
                                          600 Third Avenue, 20th Floor
                                          New York, New York 10016

15

Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com
tprzybylowski@pomlaw.com

*Counsel for Lancaster Partner LLC and Proposed Co-Lead Counsel for the Class*

THE SCHALL FIRM
Brian Schall
(*pro hac vice* application forthcoming)
Brian R. England
(*pro hac vice* application forthcoming)
2049 Century Park East, Ste. 2460
Los Angeles, CA 90067
Telephone: 310-301-3335
brian@schallfirm.com
Briane@schallfirm.com

*Counsel for Lancaster Partner LLC and Proposed Co-Lead Counsel for the Class*

16