**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IVY NIXON, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

v.

CVS HEALTH CORPORATION, KAREN S. LYNCH, SHAWN M. GUERTIN, BRIAN A. KANE, and THOMAS F. COWHEY,

Defendants.

Case No. 1:24-cv-05303-MMG

CLASS ACTION

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR RECONSIDERATION OF THE AUGUST 27, 2026 ORDER**

ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

I. Plaintiffs' half-truth theory is unsupported by particularized factual allegations.............. 2

A. Plaintiffs fail to allege that CVS used AI to deny claims. .....................................2

B. Plaintiffs fail to allege that CVS phased out AI use or that such a change impacted utilization.........................................................................................4

II. Plaintiffs fail to identify particularized facts pleading scienter. ....................................... 5

III. Plaintiffs fail to plead loss causation. .................................................................... 6

CONCLUSION........................................................................................................ 6

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Chepilko* v. *Cigna Life Ins. Co. of New York*,
952 F. Supp. 2d 629 (S.D.N.Y. 2013)........................................................................3

*Kohutka* v. *Town of Hempstead*,
2 F. Supp. 3d 378 (E.D.N.Y. 2014) ........................................................................3

*In re Merrill Lynch & Co., Inc.*,
273 F. Supp. 2d 351 (S.D.N.Y. 2003), *aff'd*, 396 F.3d 161 (2d Cir. 2005)..............................3

*In re Regeneron Pharms., Inc. Sec. Litig.,*
2026 WL 2797861 (S.D.N.Y. 2026)........................................................................4

**Rules and Statutes**

Fed. R. Civ. P. 9(b) ........................................................................1, 3

Private Securities Litigation Reform Act of 1995 ..................................................1, 3, 5

## INTRODUCTION

In their opening brief, Defendants showed why this is a rare case warranting reconsideration. The Court's Order recognized that the Complaint's pleaded facts and incorporated PSI Report show that CVS used AI to *approve*—not deny—prior authorization requests. But the Court then overlooked that conclusion when sustaining Plaintiffs' claims predicated on supposed AI denials. Plaintiffs seek to salvage their claims by twisting the law governing both pleading in securities cases and reconsideration motions.

Because of the severity of securities fraud claims—claims of *intentional fraud*—Rule 9(b) and the PSLRA impose heightened pleading standards. Plaintiffs must allege *particularized facts* supporting their theories, not just conclusory assertions or speculation that discovery might fill pleading gaps. Plaintiffs assert no fewer than five times that they need "discovery" to test their claims. Opp. 4, 6, 8, 9, 11. But they have the securities laws backwards. Unless their Complaint contains particularized allegations of fact supporting their claims, it cannot proceed to discovery. The Court correctly recognized what Plaintiffs' remaining claims require: sufficiently pleaded allegations that CVS (i) used AI tools to deny prior authorization requests and "artificially deflate" utilization, and (ii) later "phased out" those tools. The Court overlooked, however, that Plaintiffs failed to plead *particularized facts* to support those claims. Instead, as the Court correctly concluded earlier in its analysis, the pleaded facts and incorporated documents show that AI could only *approve* claims. These defects should have led the Court to conclude that Plaintiffs' remaining claims were not sufficiently pleaded.

Plaintiffs nevertheless argue that reconsideration is improper because Defendants identify no "new" facts or law, nor any fact that the Court overlooked. Opp. 2. The law of reconsideration does not require new facts or law—it allows the Court to *reconsider* previously presented facts that it overlooked. And that is exactly what happened here. The Court

overlooked its findings as to what Plaintiffs' allegations did (and did not) show and the lack of particularized factual allegations to support Plaintiffs' remaining claims. Defendants thus respectfully submit that reconsideration should be granted and the remaining claims dismissed.

## I. Plaintiffs' half-truth theory is unsupported by particularized factual allegations.

Plaintiffs try to sidestep their failure to particularly allege that CVS used AI to deny claims or that this impacted utilization by taking out of context the Order's statement that "'Defendants omitted material information—namely, their prior authorization and AI practices as significant or primary drivers of cost savings'" and the "'predictable effect'" of "'ending or curtailing those practices.'" Opp. 3 (citing Order 17). But as the Court recognized in the preceding sentences, the Complaint is not about "prior authorization and AI practices" *generally*. Rather, as the Order explained, Plaintiffs claim that Defendants "misrepresented" the "use of AI tools" in two *specific* ways: First, regarding 2024 guidance, by "fail[ing] to disclose that CVS' use of AI tools *to deny prior authorization claims* had artificially inflated performance" and "CVS was *phasing out those tools*," and second, regarding statements about performance, by "conceal[ing] that CVS had secretly deployed AI tools *to artificially deflate utilization* rates through *denials of prior authorization requests*." Order 17 (emphasis added). As the Court's explanation of these theories shows, the claims fail unless Plaintiffs alleged *particularized* facts that CVS (i) used "'AI tools to deny prior authorization claims'" and "'deflate utilization,'" *and* (ii) "'phas[ed] out those tools.'" Opening 1. Plaintiffs have not.

### A. Plaintiffs fail to allege that CVS used AI to deny claims.

Plaintiffs' Opposition does not identify a single particularized allegation showing that AI denied any prior authorization claim or that this "deflate[d] utilization." Instead, Plaintiffs wrongly assert that the Court "rejected" this argument. Opp. 3-4. Actually, the Order correctly acknowledged that the pleaded facts and incorporated documents show that AI could only

*approve* claims. Order 5, 12-13. But it then erred by overlooking that these pleaded facts also defeat Plaintiffs' remaining claims. *See Kohutka* v. *Town of Hempstead*, 2 F. Supp. 3d 378, 381 (E.D.N.Y. 2014) (reconsideration is "an opportunity … to bring overlooked matters to the court's attention"); *Chepilko* v. *Cigna Life Ins. Co. of New York*, 952 F. Supp. 2d 629, 631-32 (S.D.N.Y. 2013) (assessing on reconsideration whether allegations satisfied Rule 9(b)).[1]

None of the Complaint paragraphs that Plaintiffs cite, Opp. 4, particularly allege that AI denied claims. Instead, they make conclusory assertions that staff "rubber-stamped" AI recommendations on "target" length-of-stay and that denials were "incentivized," without any pleaded connection to actual denials (allegedly issued only by medical directors) or utilization. *Id.* Plaintiffs do not even argue that they sufficiently pleaded that AI could deny claims, only that AI could "recommend" denials, which the Complaint does not actually allege either. *Id.*

Plaintiffs' argument that the role of human reviewers is "an issue for discovery, not the pleadings" misunderstands applicable law. *Id.* The PSLRA's heightened pleading standards and discovery stay mean that Plaintiffs *do not get discovery* unless they can meet required pleading standards *without discovery*. *In re Merrill Lynch & Co., Inc.*, 273 F. Supp. 2d 351, 391 (S.D.N.Y. 2003) (PSLRA stay's "objective" is "that plaintiffs be able to plead legally sufficient claims *prior* to *any* discovery").

Finally, Plaintiffs raise a new theory that their claims survive because CVS applied the lawful, industry-standard practice of requiring prior authorizations, apart from any use of AI. This theory is not pleaded in the Complaint and provides no basis to sustain any claims. As the Court recognized in describing the two categories of sustained allegations, Order 17, Plaintiffs'

---

[1] Plaintiffs' arguments that Defendants improperly seek to "relitigate" matters or fail to identify new facts or law are thus meritless. Opp. 1-2.

falsity allegations relate to misuse of AI, not prior authorizations generally. *See also, e.g.*, ¶¶211, 221. Plaintiffs do not cite any particularized allegations supporting their new theory.

Regardless, it fails as a matter of law. It is not enough for Plaintiffs to allege that prior authorizations were material to the HCB segment's performance; Plaintiffs must explain *why* the failure to reference this industry-standard practice was materially misleading. *See* Opening 5. They never have. Plaintiffs do not particularly plead that using prior authorizations was illegal, unsustainable, or risky—nor that CVS ever phased out this practice in a way that called its statements into question. Requiring companies to disclose all factors having any material impact on performance whenever management discusses primary performance drivers would create an unworkable standard that potentially requires disclosing a laundry list of routine business practices on every earnings call. The Second Circuit's *Smith* decision and Defendants' other authorities show that this is not the law. Opening 5; *see also In re Regeneron Pharms., Inc. Sec. Litig.*, 2026 WL 2797861, at *9 (S.D.N.Y. 2026) (under "binding precedent" defendants not "obligated to mention every factor that materially contributes to [product's] success"). Plaintiffs offer no response.

**B. Plaintiffs fail to allege that CVS phased out AI use or that such a change impacted utilization.**

Plaintiffs similarly fail to identify any particularized facts showing that CVS phased out AI tools or that this materially impacted utilization (an unreasonable inference given the failure to plead that AI could deny claims). Plaintiffs' allegation that management was "summoned to a September 2023 [] PSI briefing" says *nothing*, much less anything *particularized*, about CVS' use or phase-out of AI tools. Opp. 5. Nor do allegations that the PSI initiated an investigation (which found no wrongdoing by CVS and showed CVS used AI to *auto-approve* claims, Order

5), or that CVS terminated a single vendor (PAA), show that CVS "phased out" AI use or thereby affected utilization.

Plaintiffs also fail to explain how FE-5's cryptic statement that "'the more they rolled up automation, it set off bells'" meets PSLRA standards. Opp. 6. What do "rolled up" and "automation" mean to FE-5? And FE-4 merely discusses increasing utilization trends, without stating that those trends were connected to AI. ¶¶142-43.

## II. Plaintiffs fail to identify particularized facts pleading scienter.

As Defendants explained, the Order overlooked that the PSI Report's reference to $1.1 billion was describing savings from *all* prior-authorization denials of "inpatient admissions" in Medicare Advantage—not savings from AI. Opening 7. Contrary to Plaintiffs' argument, the Order makes clear that this number was crucial to the scienter analysis. Order 21 (reasoning Defendants would have been aware of the "huge contribut[ion]" of "AI-driven automation"). Particularly given that Plaintiffs failed to allege any motive to commit fraud, Order 14, their scienter theory could only make sense if AI denials were so material that the Defendants must have known about them. Yet the only particularized allegations show AI had *de minimis* cost impact. Opening 8 (citing alleged $13.3 million administrative cost savings, $77 million medical cost savings over three years).[2]

Plaintiffs argue that their failure to particularly plead that any specific portion of the $1.1 billion related to AI denials is a "fact-intensive argument [that] requires discovery." Opp. 8. Again, under the PSLRA it is *Plaintiffs' burden* at the pleading stage, without discovery, to allege particularized facts supporting a strong inference of scienter and showing materiality of

[2] This is not a new argument. *See* MTD Opening 20, 24, 37; MTD Reply 9.

the omitted information. Citing to a big number and claiming that some unspecified portion might relate to Plaintiffs' claims is not particularized pleading.

## III. Plaintiffs fail to plead loss causation.

Plaintiffs fail to allege the necessary causal relationship to support loss causation. Regarding the May 2024 results, Plaintiffs have not pleaded that CVS used AI to deny claims, that AI use was phased out, or that any phase-out materially impacted utilization. It is therefore impossible to infer that the May 2024 results, or alleged stock decline, were impacted by the alleged fraud.

The Complaint also contains no allegation that CVS phased out prior authorizations generally, apart from AI use. Plaintiffs respond by saying that the Complaint did not allege that prior authorizations *increased* in 2024 and claiming they alleged "the scheme 'ultimately collapsed.'" Opp. 11. These are not allegations that CVS phased out prior authorizations or that this materially impacted performance.[3]

On the PSI Report, Defendants' dismissal motion argued that the Report could not support loss causation because it related only to post-acute care, a single service in Medicare Advantage, and found no wrongdoing by CVS. MTD Opening 43. Plaintiffs now argue the PSI Report caused the loss because it related to *lawful prior authorizations in general*. Opp. 12. Plaintiffs never made this argument and thus forfeited it. *See* MTD Opp. 41-43.

## CONCLUSION

Reconsideration should be granted.

[3] This is not a new argument. *See* MTD Opening 42-43; MTD Reply 18.

Dated: New York, New York
October 1, 2026

Respectfully submitted,

**WACHTELL, LIPTON, ROSEN & KATZ**

By: /s/ *David B. Anders*
David B. Anders
Graham W. Meli
Lauren M. Kofke
Emma S. Stein
51 West 52nd Street
New York, New York 10019
Tel.: (212) 403-1000
Fax: (212) 403-2000
dbanders@wlrk.com
gwmeli@wlrk.com
lmkofke@wlrk.com
esstein@wlrk.com

*Counsel for Defendants CVS Health Corporation, Karen S. Lynch, Shawn M. Guertin, Brian A. Kane, and Thomas F. Cowhey*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Rule II(B)(2) of District Judge Margaret M. Garnett's Individual Rules & Practices and Local Civil Rules 6.3 and 7.1(c) of the United States District Court for the Southern District of New York, relying on the word count of the word-processing program used to prepare the foregoing Memorandum of Law, dated October 1, 2026, I hereby certify that the Memorandum of Law contains 1,750 words (excluding the caption, table of contents, table of authorities, signature blocks, and certifications).

*/s/ David B. Anders*
David B. Anders

**CERTIFICATE OF SERVICE**

I hereby certify that, on October 1, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will give notice of such filing to all counsel of record.

*/s/ David B. Anders*
David B. Anders